*In re* S.M., Jr., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Steven Musson, Sr., Respondent-Appellant).

Fourth District    No. 4—99—0255

Opinion filed June 28, 2000.

J. Steven Beckett and Chad S. Beckett, both of Beckett & Webber, P.C., of Urbana, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten and Rob-

ert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Kristen H. Fischer, of Urbana, guardian *ad litem*.

JUSTICE KNECHT delivered the opinion of the court:

In February 1999, the trial court found respondent father, Steven Musson, Sr., an unfit parent. 750 ILCS 50/1(D)(q) (West 1998). In March 1999, the trial court concluded termination of his parental rights was in the best interests of his minor child, S.M., Jr. (born April 8, 1998). Respondent appeals and appellate counsel filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967). The record shows respondent was served with the motion. On our motion, this court granted respondent through June 28, 1999, to file additional points and authorities. Respondent filed none. After examining the record and executing our duties consistent with *Anders*, we grant appellate counsel's motion and affirm the trial court's judgment.

## I. BACKGROUND

In May 1998, the Department of Children and Family Services (DCFS) hotline received a report alleging S.M. was taken to the hospital with a closed head injury and respiratory arrest. The hospital diagnosed S.M. with shaken baby syndrome. In June 1998, the State charged respondent in No. 98—CF—772 with aggravated battery of a child (720 ILCS 5/12—4.3(a) (West 1998)) in connection with S.M.'s injuries. The same day, DCFS filed a three-count petition alleging respondent and S.M.'s mother abused and neglected S.M. by (1) not providing adequate medical care, (2) creating a substantial risk of physical injury, and (3) providing an environment injurious to S.M.'s welfare.

The following day, the trial court held a shelter-care hearing. The trial court found probable cause to believe S.M. was abused and neglected and granted temporary custody to DCFS. The trial court granted S.M.'s mother unsupervised extended visitation and respondent supervised visitation.

In July and August 1998, the trial court held adjudicatory hearings on the State's petition. The trial court ruled in favor of the State on three counts of abuse and neglect. The court found S.M. suffered from shaken baby syndrome due to massive retinal hemorrhaging in both eyes, bleeding in the brain, a fracture at the back of the skull, and a brain injury. The parents, as the sole caretakers of S.M. at the time of the injuries, offered no rational explanation for how the injuries occurred.

In September 1998, a jury convicted respondent of aggravated battery of a child in No. 98—CF—772, and the trial court sentenced him to 25 years in prison. In the same month, the trial court held a dispositional hearing on the abuse and neglect adjudication in this case. The court concluded the abuse and neglect found in this case were the result of physical abuse. The court found it was in S.M.'s best interest to be made a ward of the court.

In November 1998, the State filed a supplemental petition seeking a finding of unfitness and termination of respondent's parental rights. The petition alleged respondent was unfit based on the finding of physical abuse and a criminal conviction of aggravated battery of a child, and it would be in S.M.'s best interest to terminate respondent's parental rights.

In February 1999, the trial court conducted an adjudicatory hearing on the State's supplemental petition. The court took judicial notice of its prior findings and respondent's conviction of aggravated battery of a child. At the time of the hearing, respondent was incarcerated at Big Muddy River Correctional Center. While incarcerated, respondent received mental health counseling but no parental counseling. Respondent testified he was innocent of the aggravated battery and the case was on appeal (No. 4—98—0949). The court found by clear and convincing evidence respondent was unfit based on a finding of physical abuse and his conviction of aggravated battery of a child.

In March 1999, DCFS issued its dispositional report in this matter. The report stated S.M. was a "very disabled" 11-month-old child. S.M.'s injuries prevented him from functioning as a normal 11-month-old child, interacting with other children, or using any appreciable motor skills. S.M.'s maternal grandmother had custody of S.M. and continued to care for S.M., including a difficult daily regimen of therapy.

The report also stated respondent was incarcerated since May 1998 and was serving a 25-year prison sentence. Throughout the pendency of the case, respondent called his DCFS caseworker once, despite being told he could call collect. During the one conversation, respondent asked about S.M.'s health and whether his parents could have visitation with S.M. Respondent did not send letters, cards, toys, or clothing to S.M. during his incarceration. The report recommended termination of respondent's parental rights.

Later that month, the trial court held a dispositional hearing. At the hearing, the State asked the court to adopt the recommendations in DCFS' dispositional report. Respondent argued termination of his parental rights was premature because his conviction was on appeal. The court found termination of respondent's parental rights was in S.M.'s best interest. This appeal followed.

In December 1999, this court affirmed respondent's conviction of aggravated battery of a child. *People v. Musson*, No. 4—98—0949 (December 29, 1999) (unpublished order under Supreme Court Rule 23).

## II. ANALYSIS

Appellate counsel posits this case presents no appealable issues. He then argues the trial court abused its discretion by terminating respondent's parental rights.

### A. Proper *Anders* Procedure in Termination Cases

Before addressing counsel's argument, we clarify the correct manner by which appellate counsel should seek to withdraw from an appeal concerning the termination of parental rights.

■ Under *Anders*, appellate counsel's request to withdraw must, first, "be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744, 18 L. Ed. 2d at 498, 87 S. Ct at 1400. In other words, appellate counsel must set out any irregularities in the trial process or other potential errors, which, although in his judgment *are not* a basis for appellate relief, might arguably be meritorious in the judgment of the client, another attorney, or the court. Second, if such issues are identified, counsel must (a) sketch the argument in support of the issues that could conceivably be raised on appeal, and then (b) explain why he believes the arguments are frivolous. *In re Brazelton*, 237 Ill. App. 3d 269, 272, 604 N.E.2d 376, 378 (1992). Third, counsel must conclude the case presents no viable grounds for appeal. *In re McQueen*, 145 Ill. App. 3d 148, 149, 495 N.E.2d 128, 129 (1986). Fourth, to enable us to properly fulfill our responsibilities under *Anders*, counsel should include transcripts of the relevant hearings, *i.e.*, in termination of parental rights cases, the fitness and best interests hearings.

■ The procedure for appellate counsel to withdraw as outlined in *Anders* applies to findings of parental unfitness and termination of parental rights. *In re Keller*, 138 Ill. App. 3d 746, 747-48, 486 N.E.2d 291, 292 (1985). Parental rights and responsibilities are of deep human importance and are not terminated lightly. *In re A.T.*, 197 Ill. App. 3d 821, 825, 555 N.E.2d 402, 405 (1990). Termination is only allowed after a separate best interests hearing (*In re A.P.*, 277 Ill. App. 3d 592, 600, 660 N.E.2d 1006, 1012 (1996)), after which the trial court concludes the State has proved termination of parental rights is, in fact, in the minor's best interests (*In re J.G.*, 298 Ill. App. 3d 617, 627, 699 N.E.2d 167, 174 (1998)). Thus, we conclude, as a *threshold matter* in these cases, appellate counsel should review both (1) the finding of unfitness and (2) the best interests determination. To clarify that he

or she did so and to assist us in the execution of our duties under *Anders*, if counsel finds no appealable issue is present as to one of these two stages sufficient to trigger the *Anders* procedure above, he or she should so state *in the introduction* to the argument portion of the brief, *i.e.*, state counsel also reviewed the "X" hearing and concludes no appealable issue whatsoever is presented with respect to it.

## B. As Applied

In the present case, appellate counsel filed a motion to withdraw accompanied by a brief. In opening the argument section of the brief, counsel states, "It is counsel's position there are no appealable issues in the present case." Counsel continues, stating respondent, another attorney, or the court may, however, find meritorious issues in whether the trial court's findings on its termination of respondent's parental rights (apparently, the court's best interests finding) were contrary to the manifest weight of the evidence. Counsel proceeds to brief the best interests argument, ending with the following: "In light of the foregoing facts and law, the trial court abused its discretion by terminating the [father's] parental rights."

In the "conclusion" section of the brief, he further suggests this court should *reverse* the trial court's decision and remand the case for further proceedings. Counsel follows this section with a section entitled, "Explanation of *Anders* Decision," stating why the trial court's decision was *not* against the manifest weight of the evidence. Counsel ends the appellant brief, stating: "For the foregoing reasons, counsel has followed the *Anders* procedure and is[,] contemporaneously with the filing of this brief, filing a [m]otion for [l]eave to [w]ithdraw."

Counsel's brief deviates from the procedure we outlined above in several respects. First, the brief fails to make clear at the outset that counsel in fact (1) reviewed the court's adjudication and finding of unfitness and (2) concluded no appealable issue whatsoever can be raised about it. (Based on our review of the record, however, we find the trial court's finding of unfitness is supported by clear and convincing evidence (*J.G.*, 298 Ill. App. 3d at 627, 699 N.E.2d at 174); defendant was convicted of aggravated battery of a child and is therefore unfit (750 ILCS 50/1(D)(q) (West 1998)).)

Further, the brief's argument and conclusion conflict with *Anders*. In concluding the argument, counsel suggests the court erred; in the section labeled "Conclusion," counsel asks this court to reverse; in a later section labeled "Explanation of *Anders* Procedure," counsel states why he followed *Anders* and filed a motion to withdraw. If ap-

pellate counsel concludes the case presents no colorable grounds for appeal, counsel should be consistent throughout the brief. See *McQueen*, 145 Ill. App. 3d at 149, 495 N.E.2d at 129. The conclusion should state this. It should not appear appellate counsel wants to appeal on the merits and withdraw at the same time.

We have nevertheless reviewed the record of the best interests hearing and we conclude no colorable issue exists concerning the trial court's finding termination of respondent's parental rights was in S.M.'s best interests. At a termination hearing, the trial court must determine whether termination of parental rights is in the best interests of the children. *In re D.L.W.*, 226 Ill. App. 3d 805, 809, 589 N.E.2d 970, 973 (1992). A reviewing court will not disturb a trial court's determination unless it is against the manifest weight of the evidence. *In re S.H.*, 284 Ill. App. 3d 392, 401, 672 N.E.2d 403, 409 (1996). The reviewing court does not reweigh the evidence or reassess the credibility of the witnesses. *In re C.P.*, 191 Ill. App. 3d 237, 244, 547 N.E.2d 604, 608 (1989).

Evidence at the best interests hearing showed respondent was responsible for S.M.'s permanent injuries and would not be in a position to have S.M. returned to him at any time in the near future. Respondent was in prison serving a sentence of 25 years and S.M. was in the custody of his maternal grandmother, who provided S.M. with the aid he needed and stability. In addition, S.M.'s mother was involved in S.M.'s care and was working toward regaining custody of S.M. Given these circumstances, termination of respondent's parental rights was, as the trial court concluded, in S.M.'s best interests.

## III. CONCLUSION

For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

Affirmed.

STEIGMANN and GARMAN, JJ., concur.